## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

RENARDO SMITH,

      Petitioner,

v.                                              Case No. 3:19-cv-364-LC-MJF

MARK S. INCH,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Renardo Smith has filed a second amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 11). Respondent ("the State") answered, providing relevant portions of the state court record. (Doc. 18). Smith did not reply.[1] The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Smith is not entitled to habeas relief.[2]

### I.    Background and Procedural History

The facts are drawn from the evidence presented at trial, viewed in the light most favorable to the State. (Doc. 18, Attach. 1, Ex. A at 43-194 (trial transcript)).

---

[1] Smith instead wrote a letter to the clerk of the court seeking to negotiate a deal with federal officials for his release. (Doc. 22).

[2] The court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

Kshunda Silas, the victim in this case, met Smith on February 14, 2012. Two months later, on Easter Sunday, Silas learned she was pregnant with twins and told Smith of the pregnancy. Smith assured Silas he would provide for the children, and he accompanied her during pre-natal appointments with her physician.

On May 17, 2012, Silas visited Smith at his hotel room at the Palm Court Inn in Pensacola, Florida. Smith became angry with Silas because he thought she was calling his "home boys." Smith demanded Silas's phone, and when she gave it to him, Smith threw it against the wall. Silas picked up her phone and attempted to leave the hotel room, but Smith refused to let her leave. Silas then ran to the bathroom to call her mother, but before she could make the call Smith burst into the bathroom, put both hands around Silas's neck, and dug his fingernails into her neck, leaving scratches on her skin.

Silas pried Smith's hands from her neck and pushed him away. Smith grabbed a handful of Silas's braids, pulled them out of her head, and threw them in the garbage can. Silas tried to leave the hotel room a second time, but Smith again prevented her from leaving. Silas attempted to distance herself from Smith by running to the bed and jumping on top of it. The two continued to argue and, at one point, Silas fell onto the floor. Smith got on top of Silas, grabbed her by the neck with both hands, and put his knee on her head. Smith then took hold of Silas's head and banged it against the floor for at least three minutes. When Smith eventually

allowed Silas to get up, she sat on the bed and cried. Silas's face was red, bruised and swollen from having hit the floor. Smith left the hotel room to get food and pain medicine for Silas. Silas used that opportunity to call 911. Silas and Smith's twins were born on September 13, 2012.

On July 3, 2012, Smith was charged in Escambia County Circuit Court Case No. 2012-CF-2936, with Aggravated Battery on a Pregnant Person (Count 1, a second-degree felony); Domestic Battery by Strangulation (Count 2, a third-degree felony); and False Imprisonment (Count 3, a third-degree felony). (Doc. 18, Attach. 1, Ex. A at 1-2).[3] On February 7, 2013, the case was set for a jury trial to begin April 8, 2013. (Attach. 1, Ex. A, Progress Docket Report Page #5).

On April 8, 2013, Smith waived a jury trial and requested a bench trial. (Attach. 2, Ex. C at 347-359). A bench trial was held on April 10, 2013. (Attach. 1, Ex. A at 43-194). At the close of the State's case, the trial judge granted a judgment of acquittal on the felony Battery by Strangulation charge and allowed the State to amend Count 2 of the information to charge the lesser included offense of misdemeanor Battery. (*Id*. at 147-149, 171-72, 258). At the close of all the evidence,

---

[3] Citations to the state court record are to the electronically filed exhibits attached to the State's answer. (Doc. 18). The citation refers to the electronic attachment number followed by the lettered exhibit. If a page of an exhibit bears more than one page number, the court cites the Bates stamp number appearing at the bottom center of the page.

the trial judge found Smith guilty as charged of Aggravated Battery on a Pregnant Person (Count 1), misdemeanor Battery (Count 2), and False Imprisonment (Count 3). (*Id*. at 181-83). The court deferred sentencing to April 25, 2013. (*Id*. at 191).

On April 23, 2013, the State filed a notice of Smith's qualification as a prison releasee reoffender ("PRR") and mandatory sentencing under Section 775.082, Florida Statutes. (Attach. 1, Ex. B at 202). Section 775.082 provides that if the State establishes by a preponderance of the evidence that the defendant is a prison releasee reoffender as defined in that statute, the defendant must be sentenced to the statutory maximum sentence (15 years of imprisonment for a second-degree felony and 5 years of imprisonment for a third-degree felony). Fla. Stat. § 775.082(9)(a). A person sentenced as a PRR "shall be released only by expiration of sentence and shall not be eligible for parole, control release, or any form of early release." Fla. Stat. § 775.082(9)(b). A PRR "must serve 100 percent of the court-imposed sentence." *Id*.

At Smith's sentencing hearing, the court determined that Smith was a prison releasee reoffender and sentenced him to 15 years of imprisonment for the Aggravated Battery, a concurrent term of 5 years in prison for the False Imprisonment, and time served on the misdemeanor Battery. (*Id*. at 203-245 (sentencing hearing transcript), 250-59 (judgment)). The Florida First District Court of Appeal ("First DCA") affirmed on July 14, 2014, *per curiam* without written

opinion. *Smith v. State*, 147 So. 3d 989 (Fla. 1st DCA 2014) (Table) (copy at Attach. 2, Ex. H).

On April 6, 2015, Smith filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he amended. (Attach. 2, Ex. I at 1-8 (original motion), 16-27 (amended motion)). The state circuit court summarily denied relief. (*Id*. at 31-46). The First DCA reversed and remanded for an evidentiary hearing. *Smith v. State*, 219 So. 3d 978 (Fla. 1st DCA 2017) (copy at Attach. 3, Ex. N). The circuit court conducted an evidentiary hearing during which Smith was assisted by counsel. (Attach. 3, Ex. O at 147-170). The court denied relief by written order. (*Id*. at 171-199). The First DCA affirmed *per curiam* without written opinion. *Smith v. State*, 255 So. 3d 267 (Fla. 1st DCA 2018) (Table) (copy at Attach. 3, Ex. S). The mandate issued November 13, 2018. (Attach. 3, Ex. T).

Smith filed his original *pro se* federal habeas petition on February 5, 2019, which he twice amended. (Docs. 1, 5, 11). Smith's second amended petition raises one claim: counsel was ineffective for failing to advise him, during plea negotiations, that the State could seek enhanced sentencing under the PRR statute if Smith was convicted after a trial. (Doc. 11).

The parties agree that Smith presented his ineffective assistance claim to the state courts in his Rule 3.850 proceeding; that the state circuit court denied relief on the merits in a reasoned order; that Smith briefed the issue in his postconviction

appeal; and that the First DCA summarily affirmed without explanation. (Doc. 11 at 4; Doc. 18 at 15-16). The State asserts that Smith is not entitled to habeas relief because he fails to meet § 2254(d)'s demanding standard. (Doc. 18).

## II.    Section 2254 Standard of Review

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[4] Justice O'Connor described the appropriate test:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

---

[4] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Section 2254(d) also allows habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). AEDPA also requires federal courts to "presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Landrigan*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)).

The Supreme Court has often emphasized that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

## III.    Discussion

Smith's petition raises a single claim:

Ineffective assistance of counsel since the record shows Petitioner established by a reasonable probability that he would [have] accepted the State's plea offer of 28 months and also met the remaining prejudice prongs of Alcorn, the trial court erred in denying 3.850 relief. Counsel admitted to not informing Petitioner about facing PRR, and Petitioner was willing to plea bargain because he hired trial counsel with a promise of receiving a year.

(Doc. 11 at 4).

### A.    State Court's Decision

Smith presented this claim to the state courts as the sole ground for relief in his amended Rule 3.850 motion. (Doc. 18, Attach. 2, Ex. I at 16-27). After hearing, the circuit court denied relief as follows:

In September 2015, the Defendant filed an amended motion for post-conviction relief. In his motion, the Defendant raised a single claim. The Defendant claims that he rejected two plea offers in this case, one for 8.5 years in state prison and one for 28 months in state prison. The Defendant alleges that "had he been informed that he could be sentenced as a [PRR], he would have without a doubt accepted the second plea deal offered by the State that called for [Defendant] to serve 28 months in prison. . . ."

The Defendant alleges the first plea offer was in February 2013 and the second plea offer was extended on March 26, 2013. The Defendant's bench trial was on April 10, 2013.

The Defendant alleges that "Trial Counsel has admitted to Petitioner and Petitioner's appellate counsel . . . that he did not tell Petitioner about the possibility of a [PRR] sentence and that he had no reason for this omission." Motion, at 2.

Analysis

A single issue is presented in this case. Was the Defendant's trial counsel Gene Mitchell ineffective for failing to advise the Defendant, when the State's favorable plea offer was rejected, the Defendant faced PRR sentencing?

At the time the Defendant rejected the State's plea offers, he had not been informed by Mr. Mitchell that he met the statutory criteria to be sentenced as a PRR. However, the State had not filed a notice of intent to seek PRR sentencing. Therefore, at the time the Defendant was considering the State's plea offer, being sentenced as a PRR sentence was simply a possibility. It was also possible at the time the Defendant rejected the State's plea agreement that the State would not seek PRR sentencing.

Nevertheless, the court agrees with the Defendant that his counsel was deficient for failing to advise him that being sentenced as a PRR was a possibility if convicted at trial.FN2 Mathis v. State, 848 So. 2d 1207, 1208 (Fla. 1st DCA 2003); Henry v. State, 91 So. 3d 934 (Fla. 1st DCA 2012); Armstrong v. State, 148 So. 3d 124, 125 (Fla. 2d DCA 2014). In this case, however, the Defendant is not entitled to post-conviction relief. The Court concludes that the Defendant was not prejudiced by his counsel's deficiency.

> Specifically, to establish prejudice, the defendant must allege and prove **a reasonable probability**, defined as a probability sufficient to undermine confidence in the outcome, that (1) **he or she would have accepted the offer had counsel advised the defendant correctly**, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Alcorn v. State, 121 So. 3 419, 430 (Fla. 2013) (emphasis added).

FN2  Indeed, if such conduct did not constitute deficient performance, it is only logical that the First District Court

of Appeal would not have required an evidentiary hearing on this claim. § 924.33, Fla. Stat.

The Defendant was aware that he could be sentenced up to 25 years in state prison if found guilty as charged. Yet, the Defendant rejected the State's favorable plea offer of 28 months in state prison. It is clear from the testimony presented that the Defendant, *prior to trial*, was not interested in a plea offer unless it was for a year in the County Jail. The Defendant's post-conviction testimony that he would have accepted the State's plea offer if his counsel had explained he met the criteria for PRR sentencing is not credible.

Initially, the Court would note the rather obvious point that such testimony is self-serving. As the Florida Supreme Court has instructed, "courts are entitled to accept the defendant's undisputed, yet self-serving, allegation that he would have taken the plea offer but for being misadvised on the proper statutory maximum as a basis for finding prejudice, **but courts are not precluded from rejecting such a statement either**." Alcorn v. State, 121 So. 3d 419, 431-32 (Fla. 2013) (emphasis added). The Court does not find the Defendant's testimony on this issue to be credible and it is not consistent with more reliable evidence before the Court.

When the Defendant turned down the 28 month plea offer, [the] State had not filed a PRR notice. If the Defendant was willing to take his chances at trial despite the fact that the Court *could* impose a total sentence of 25 years in state prison, it is difficult to conclude that the Defendant would not proceed to trial because the State *could* seek PRR sentencing.

When the Defendant told his counsel, "No deals," the Defendant did so with the hope that he would prevail at trial. The Defendant was only willing to give [up] his self-perceived "strong" defense if the State offered a sentence of a year or less in the County Jail. No plea offer for a year or less in the County Jail was extended by the State.

Indeed, Mr. Mitchell's testimony reflects that he was mindful of his duty not to coerce a plea from the Defendant. As the Second Circuit Court of Appeals has noted, "a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." Purdy v. United

<u>States</u>, 208 F.3d 41, 45 (2d Cir. 2000). Thus, an attorney properly advising the Defendant could not have told that a PRR sentence was a certainty when the State had not filed a PRR notice. Also, Mr. Mitchell's discussions with the original prosecutor in the case did not give an indication that the State was seeking PRR sentencing. Mr. Mitchell testified, "I was giving Mr. Smith the conversations that I was having with the State." Advice that a PRR sentence was a certainty in such a scenario may have had the improper effect of coercing the Defendant into pleading nolo contendere. On the other hand, counsel should have advised the Defendant that PRR sentencing was a possibility.

> FN3   Mr. Mitchell testified that after the Defendant rejected the plea offers in the case, the original prosecutor died. A new prosecutor took over the case. The bench trial took place on April 10, 2013. The State filed a PRR notice on April 23, 2013.

Nevertheless, the Defendant was adamant that he was not interested in a plea agreement unless it was for a year in the County Jail, even though the Defendant was advised that he faced a total possible sentence of 25 years in state prison. Based on the totality of the evidence, the Court finds that even if counsel had properly advised the Defendant that PRR sentencing was a possibility, there is no reasonable probability the Defendant would have accepted the plea. The Court finds Mr. Mitchell's testimony that the Defendant was not interested in a plea agreement [to] be credible.

Accordingly, it is **ORDERED and ADJUDGED** that the Defendant's amended motion for post-conviction relief is hereby **DENIED**. The Defendant has the right to appeal within thirty (30) days of the rendition of this order.

(Attach. 3, Ex. O at 172-175). The First DCA summarily affirmed. (Attach. 4, Ex. M).

The First DCA's summary affirmance is an "adjudication on the merits" of Smith's claim, and is reviewed under § 2254(d)'s deferential standard. *See Richter*,

562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary); *id*. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"). Because the First DCA's decision was unaccompanied by an explanation, this court looks through the unexplained decision to the state circuit court's reasoned order and presumes that the First DCA adopted the same reasoning. *See Wilson v. Sellers*, 584 U.S. __, 138 S. Ct. 1188, 1192 (2018) (holding that where there has been one reasoned state judgment rejecting a federal claim followed by a later unexplained order upholding that judgment, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.").

## B.    Clearly Established Federal Law

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Id.* at 168. The two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that counsel was

ineffective during plea negotiations. *Lafler*, 566 U.S. at 163 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer); *Missouri v. Frye*, 566 U.S. 134 (2012) (applying *Stricklan*d's two-part test to federal habeas petitioner's claim that counsel was ineffective for failing to communicate a prosecution plea offer before it lapsed); *Hill v. Lockhart*, 474 U.S. 52 (1985) (applying *Strickland*'s two-part test to defendant's challenge to guilty plea based on ineffective assistance of counsel).

Under *Strickland*, the petitioner must show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.' Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184 (1986) (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

In the context of plea negotiations, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "To show prejudice from

ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147. Defendants must also, however, "complete [their] showing of *Strickland* prejudice" by also showing that "if the prosecution had the discretion to cancel [the plea offer] or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. This further showing is of particular importance because a defendant has no right to be offered a plea, nor a federal right that the judge accept it." *Frye*, 566 U.S. at 148-149 (citations omitted). The Supreme Court summarized in *Lafler*:

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

566 U.S. at 164.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are

mixed questions of law and fact. *See Strickland*, 466 U.S. at 698. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## C.    Section 2254 Review of State Court's Decision

Smith argues that the state court unreasonably applied *Strickland*'s prejudice standard because he sufficiently established that he would have accepted the State's 28-month plea offer had he known he could be sentenced as a PRR if convicted after a trial. Implicit in Smith's claim is a challenge to the state court's finding that his evidentiary hearing testimony was not credible. (Doc. 11 at 4).

In reviewing the reasonableness of the state court's decision, this court defers to the state court's factual findings, because they are amply supported by the record and because Smith has not rebutted them with clear and convincing evidence to the

contrary. *See Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (holding that the AEDPA "affords a presumption of correctness to a factual determination made by a state court; the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.") (citing 28 U.S.C. § 2254(e)). This deference extends to the state court's determination that Smith's evidentiary hearing testimony was not credible and that Attorney Mitchell's testimony was credible. Eleventh Circuit precedent requires this deference. "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Consalvo*, 664 F.3d at 845 (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).

This court also defers to the state court's determinations of state law, including that Smith faced a maximum possible sentence, without regard to any sentencing enhancements, of 25 years in prison if convicted as charged after a trial. *See Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("'It is a fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (quoting *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005))); *see also* Fla. Stat. § 775.082(3)(d) and (e) (prescribing maximum penalties).

Based on the state court's findings, fairminded jurists can concur in the conclusion that Smith failed to establish prejudice under *Strickland*. Attorney Mitchell testified that Smith was so confident he would prevail at trial, he took the position of "no deals" that entailed serving any more than one year in the county jail (most of which he already had served). In the year leading up to trial, Silas wrote several statements, including sworn affidavits, stating unequivocally that Smith did not hold her against her will or intentionally touch her against her will, and that she did not want Smith prosecuted. (Attach. 3, Ex. O at 150 (Mitchell's evidentiary hearing testimony); *see also* Attach. 1, Ex. B at 196-201 (Silas's written statements)). Smith felt "he had a very strong defense." (Attach. 3, Ex. O at 150).

When the plea offers came in, Mitchell went over the proposed written plea agreements with Smith, which set forth the statutory maximum sentence for each charge. (Attach. 3, Ex. O at 155-57). Mitchell testified to Smith's reaction to the plea offers:

> Given that she [Silas] had come to my office and, you know, written these things, I think that he [Smith] felt perhaps we could reason that he had a very strong defense.
>
> And so as the offers came, he, you know, offered a very polite "no thank you." A very cavalier "no thank you."
>
> And then, when the offer came that was closest to trial, you know, he said, "absolutely not." You know, "no deals, no deals," that sort of thing.

(Attach. 3, Ex. O at 150-151). Mitchell testified that Smith's confidence in his defense was bolstered by the prosecutor's acknowledgement, throughout the case, that the State's case was weak without Silas's cooperation:

> The lawyer prosecuting the case was a gentleman named Beau Peterson. And Beau and I had— in the weeks leading up to—maybe even months leading up to the ultimate outcome, we talked about the case lots of times about, you know, the posture of Ms. Silas, about the defenses, lots of case numbers, about the fact that there was a great deal of exposure. You know, all that you can imagine.

> And I don't think that Mr. Peterson really wanted to go forward, you know. And so, ultimately, when we got right up to the point in deciding to go to trial, here we were with the offer, and, you know, Mr. Smith, you know, "no deals," and Mr. Peterson and I had this conversation. And it was along the lines of his office or him not being authorized to get— give any better offer.

> He recognized, well, you know, if you go to trial, you might win all, or you might win some. . . . You might win, you know, that sort of thing.

> So, ultimately, we waived jury, and we went to trial. But between that time, between the time that we waived jury and we went to trial, Mr. Peterson took his own life. And in comes another assistant state attorney, Mr. Bouk, Troy Bouk.

> And Troy Bouk did some more aggressive things. Troy Bouk got in his car and went to the home of Ms. Silas out of concern that she wasn't going to come to court, and he made sure she came to court. Brought her—think he brought her. He certainly went to her house the day of trial.

> And we tried the case or the cases, whichever it was. You know, Mr. Bouk put on, you know, his evidence. He put on tape recorded phone calls, you know, between Mr. Smith and Ms. Silas from the jail and stuff.

(Ex. O at 151-152); *see also* Attach. 1, Ex. A at 11 (prosecutor Peterson's acknowledgement, at Smith's August 9, 2012, bond reduction hearing, of "the weakness of the State's case").

In Mitchell's discussions with Peterson, Peterson never mentioned the possibility of a PRR enhancement as a risk of Smith going to trial (or as incentive for Smith to pled guilty). (Ex. O at 154). To the contrary, Peterson revealed to Mitchell that he thought Smith might "win" some or all of the charges and, even if convicted, be able to convince the judge, with Silas's support, to mitigate his sentence. (*Id*. at 151-154). Mitchell relayed his conversations with Peterson to Smith. (*Id*.).

 Peterson's comments, coupled with Silas's sworn exculpatory statements, convinced Smith that he could beat the charges and that the only acceptable plea deal was one year in the county jail. Mitchell summarized:

> I don't think that he thought that she would testify. And we all know she didn't want to, okay?

> And I think that he felt that even if she did testify, given what she had written in the affidavits, which we provided in discovery and are part of the files, I – I think that he felt he would prevail.

> I don't know if he thought she was going to show up or not. But I think that at a minimum, because of what she had written, I feel like he felt his defense was pretty strong.

(*Id*. at 156). Mitchell testified that even if he had informed Smith that part of his sentence exposure if he lost at trial was a PRR sentence, it would not have changed

Smith's mind concerning the 28-month plea offer because Smith was so confident he would prevail. (*Id*. at 154). Mitchell confirmed at the close of his testimony:

> Q. [Assistant State Attorney] You're confident, though, based upon your experience as a criminal trial lawyer, no matter what the downside of this case for Mr. Smith, that he would have not accepted any plea offer?
>
> A. [Mitchell] He said no deals. Yeah, he did.
>
> Q. Period?
>
> A. He – he did. Yes, sir.
>
> Q. Okay.
>
> A. I don't know if you're hearing me. Yeah, he said "no deals." He did say that.
>
> Q. No matter what?
>
> A. Yes, sir.

(*Id*. at 158).

The state court was not unreasonable in concluding that, under the totality of the evidence, Smith failed to establish there was a reasonable probability he would have accepted the State's plea offer, which would have entailed serving 28 months of imprisonment, had counsel informed him of his PRR eligibility. *See Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable."). The state court's rejection of Smith's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard. Nor was the

decision based on an unreasonable determination of the facts. Smith is not entitled to federal habeas relief.

## IV.   Certificate of Appealability is Not Warranted

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El*, 537 U.S. at 336 (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. __, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The second amended petition for writ of habeas corpus (Doc. 11), challenging the judgment of conviction and sentence in *State of Florida v. Renardo Antione Smith*, Escambia County Circuit Court Case No. 2012-CF-2936, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of court close this case file.

At Panama City, Florida, this <u>2nd</u> day of July, 2020.

<u>/s/ <i>Michael J. Frank</i></u>
**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is</u>**

**<u>for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**